1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RANDY D. NAB,
                                                  No. CIV S-06-2191 GEB DAD PS
11              Plaintiff,

12      v.

13   CONTRACTORS STATE                    FINDINGS AND RECOMMENDATIONS
     LICENSE BOARD, et al.,
14
                Defendants.
15   _____/

16          This matter came before the court on June 29, 2007, for hearing of three motions

17   filed by defendants.  Plaintiff, proceeding pro se, appeared on his own behalf.  Stephen J. Egan,

18   Deputy Attorney General, appeared for defendants.  The motions were taken under submission.

19          Upon consideration of the parties' statements in open court and all written

20   materials submitted in connection with the parties' motions, the undersigned recommends that

21   both of defendants' motions to dismiss be granted and that defendants' motion to stay this action

22   be denied as moot.

23                                        BACKGROUND

24          Plaintiff commenced this action on October 3, 2006, by filing a habeas petition

25   naming the Contractors State License Board ("CSLB") as respondent.  Plaintiff's pleading was

26   liberally construed as a civil rights action seeking relief pursuant to 42 U.S.C. § 1983.  After

                                                1

1  plaintiff paid the appropriate filing fee, the Clerk of the Court issued a summons for defendant

2  Contractors State License Board.  In a first amended complaint filed as a matter of course,

3  plaintiff named John Lawton as an additional defendant.

4  Defendant CSLB initially moved to dismiss the original complaint but

5  subsequently moved to dismiss the first amended complaint.  Plaintiff moved for leave to amend

6  his complaint to add a third defendant.  Defendant Lawton responded to the first amended

7  complaint by moving for a more definite statement.  In findings and recommendations filed

8  February 21, 2007, the undersigned recommended that defendant CSLB's motion to dismiss the

9  amended complaint be granted and all claims against defendant CSLB be dismissed with

10 prejudice. Defendant Lawton's motion for more definite statement was granted, and plaintiff's

11 amended complaint was dismissed with leave to file a second amended complaint.  The district

12 judge adopted the findings and recommendations, dismissing all claims against defendant CSLB

13 with prejudice.

14 Plaintiff filed his second amended complaint on March 14, 2007, suing seventeen

15 persons in their individual and official capacities.  Defendant Kelly is the chairperson of the

16 CSLB, defendant Miller is the vice chairperson, and defendants Baldacci, Barnes, Booth, Brown,

17 Kirkbride, Lamb, Lang, Matich, Medrano, Mitchell, O'Rourke, and Zampa are members of the

18 CSLB.  Defendant Sands is the CSLB's registrar, defendant Lawton is the CSLB's legal action

19 deputy, and defendant Villucci is the CSLB's chief investigative officer.

20 Defendants Lawton and Villucci filed answers to plaintiff's second amended

21 complaint.  Defendants Baldacci, Barnes, Booth, Brown, Kelly, Kirkbride, Lamb, Lang, Matich,

22 Medrano, Miller, Mitchell, O'Rourke, and Zampa filed a motion to dismiss the second amended

23 complaint for failure to state a claim for relief against them.  The same fourteen defendants filed

24 a separate motion to stay prosecution of this action until completion of state criminal

25 proceedings.  Defendant Sands filed his own motion to dismiss the second amended complaint

26 for failure to state a claim.

1      LEGAL STANDARDS FOR DISMISSAL PURSUANT TO RULE 12(b)(6)

2           A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the

3  complaint.  North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).

4  Dismissal of the complaint or any claim within it "can be based on the lack of a cognizable legal

5  theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v.

6  Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  See also Robertson v. Dean Witter

7  Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

8           In considering a motion to dismiss for failure to state a claim, the court accepts as

9  true all material allegations in the complaint and construes those allegations, as well as the

10  reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff.

11  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Hospital Bldg. Co. v. Trustees of Rex

12  Hosp., 425 U.S. 738, 740 (1976); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

13  The court must resolve doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421

14  (1969).  However, the court need not accept as true conclusory allegations, unreasonable

15  inferences, or unwarranted deductions of fact.  Western Mining Council v. Watt, 643 F.2d 618,

16  624 (9th Cir. 1981).  Pro se pleadings are held to a less stringent standard than those drafted by

17  lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).

18           For fifty years, courts have applied the Supreme Court's statement in Conley v.

19  Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state

20  a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

21  claim that would entitle him to relief."  See NOW, Inc. v. Scheidler, 510 U.S. 249, 256 (1994);

22  Hishon, 467 U.S. at 73; Cervantes v. City of San Diego, 5 F.3d 1273, 1274-75 (9th Cir. 1993);

23  Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  The

24  Supreme Court recently determined that the "no set of facts" standard "is best forgotten as an

25  incomplete, negative gloss on an accepted pleading standard:  once a claim has been stated

26  adequately, it may be supported by showing any set of facts consistent with the allegations in the

3

1   complaint." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, ___, 127 S. Ct. 1955, 1969 (2007).

2   Accordingly, to state a claim on which relief may be granted, the plaintiff must allege "enough

3   facts to state a claim to relief that is plausible on its face." Id. at 1974.

4                                   ANALYSIS

5   I.  Defendants' Motions to Dismiss

6            Defendants Baldacci, Barnes, Booth, Brown, Kelly, Kirkbride, Lamb, Lang,

7   Matich, Medrano, Miller, Mitchell, O'Rourke, and Zampa seek dismissal of plaintiff's second

8   amended complaint on eight grounds:  (1) Board members acting as a Board are not persons for

9   purposes of § 1983; (2) Board members acting as a Board are immune from suit under the 11th

10  Amendment; (3) the pleading is vague and conclusory and contains no specific allegations stating

11  a claim against each individual defendant; (4) defendants are entitled to absolute prosecutorial

12  immunity; (5) defendants are entitled to qualified immunity; (6) plaintiff has failed to allege

13  deprivation of any right, privilege or immunity protected by federal law; (7) causes of action that

14  accrued more than two years before this case was filed are barred by the statute of limitations;

15  and (8) plaintiff has not stated civil rights claims against the defendants acting in their individual

16  capacities and fails to state a claim for not being issued a home improvement sales license.

17  Defendant Sands seeks dismissal on grounds (3) through (8) listed above.

18           A.  Eleventh Amendment Immunity and Persons for Purposes of § 1983

19           Defendants challenge the pro se plaintiff's claims against the defendants in their

20  official capacities.  The Eleventh Amendment serves as a jurisdictional bar to suits for damages

21  brought by private parties against a state or state agency unless the state or the agency consents to

22  such suit.  See Quern v. Jordan, 440 U.S. 332 (1979); Alabama v. Pugh, 438 U.S. 781 (1978)

23  (per curiam); Jackson v. Hayakawa, 682 F.2d 1344, 1349-50 (9th Cir. 1982).  In addition, the

24  States and their departments, agencies and other political subdivisions are not persons for

25  purposes of § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 65-66, 70-71 (1989);

26  Gilbreath v. Cutter Biological, Inc., 931 F.2d 1320, 1327 (9th Cir. 1991).

1    In the present case, plaintiff's claims against defendant CSLB have been

2 dismissed with prejudice because the entity is a state agency, it has not waived Eleventh

3 Amendment immunity to suits for damages, and it is not a person for purposes of § 1983.  Due to

4 the fact that plaintiff's first amended complaint requested injunctive relief,[1] the court advised

5 plaintiff that a state official acting in his or her official capacity may be sued under § 1983 for

6 prospective injunctive relief.  (Findings & Recommendations filed Feb. 21, 2007, at 5 n.1.)

7 Plaintiff was further advised, however, that a state official acting in his or her official capacity

8 may not be sued for damages under § 1983 because official-capacity actions for damages are

9 treated as actions against the State.  (Id.)

10    In his second amended complaint, plaintiff seeks only damages and declaratory

11 relief.  (See Second Am. Compl. at 2, 7 & 21-23.)  In opposition to defendants' motions, plaintiff

12 confirms that he no longer seeks injunctive relief.  (Pl.'s Opp'n filed June 6, 2007, at 2.)

13 Plaintiff's claims for declaratory relief and damages against the defendants in their official

14 capacities must be treated as claims against the State.  All such claims should be dismissed

15 because they are barred by the Eleventh Amendment and because the State is not a person for

16 purposes of § 1983.  Defendants are entitled to dismissal of all claims alleged against them in

17 their official capacities.

18    B.  Prosecutorial Immunity

19    Defendants assert that they are entitled to absolute prosecutorial immunity.  A

20 prosecutor is entitled to absolute immunity from a civil action for damages when the case

21 challenges activities related to the initiation and presentation of a criminal prosecution.  Imbler v.

22 Pachtman, 424 U.S. 409, 430-31 (1976).  Prosecutorial immunity is available only when the

23 prosecutor "performs a function that is 'intimately associated with the judicial phase of the

24 _____

25    [1] Plaintiff sought immediate reinstatement of his contractor's license and an order
requiring CSLB to expunge certain records, reimburse plaintiff for fines and reinstatement fees,
26 dismiss felony charges, and return his lap top computer, printer, and carrying case.

5

1  criminal process.'" KRL v. Moore, 384 F.3d 1105, 1110 (2004) (quoting Imbler, 424 U.S. at

2  430).  Put another way, it is the prosecutor's quasi-judicial functions, rather than his

3  administrative or investigative functions, that are absolutely immune, and therefore the

4  prosecutor's absolute immunity applies only after probable cause is established or criminal

5  proceedings have begun.  KRL, 384 F.3d at 1111 (citing Broam v. Bogan, 320 F.3d 1023, 1030

6  (9th Cir. 2003)).

7           The Supreme Court has determined that the decision to initiate administrative

8  proceedings resembles a prosecutor's decision to initiate or move forward with a criminal

9  prosecution, and therefore executive officials who initiate administrative proceedings may be

10  entitled to complete "quasi-judicial" immunity from damages.  Butz v. Economou, 438 U.S. 478,

11  512-15 (1978).  See also Mitchell v. Forsyth, 472 U.S. 511, 521 (1985); Imbler, 424 U.S. at 430.

12  When considering claims of governmental immunity, courts must apply a presumption that

13  qualified rather than absolute immunity is sufficient to protect government officials when

14  performing their duties.  Fry v. Melaragno, 939 F.2d 832, 835 (9th Cir. 1991) (citing Burns v.

15  Reed, 500 U.S. 478, 486-87 (1991)).  In some instances, however, "certain government officials

16  require absolute immunity from liability in order to enable them to function independently and

17  effectively, without fear of intimidation and harassment."  Id.

18           Determining whether the actions of a government official are immunized requires

19  a functional analysis.  Imbler, 424 U.S. at 430.  It is the classification of the challenged acts,

20  rather than the motivation underlying them, that determines whether absolute immunity applies.

21  Ashelman v. Pope, 793 F.2d 1072, 1076 (9th Cir. 1986) (en banc).  The court should "'examine

22  the nature of the functions with which a particular official or class of officials has been lawfully

23  entrusted, and . . . seek to evaluate the effect that exposure to . . . liability would likely have on

24  the appropriate exercise of those functions.'"  Fry, 939 F.2d at 835 n.6 (quoting Forrester v.

25  White, 484 U.S. 219, 224 (1988)).  Additional factors to be considered by the court are "(1)

26  whether there is 'a historical or common law basis for the immunity in question;' (2) whether

1    performance of the function poses a risk of harassing or vexatious litigation against the official;

2    and (3) whether there exist alternatives to damage suits against the official as means of redressing

3    wrongful conduct." Id. (citations omitted).

4         The official seeking absolute immunity bears the burden of establishing that

5    immunity is justified with respect to the function he or she performs. KRL, 384 F.3d at 1110

6    (citing Burns, 500 U.S. at 486); Fry, 939 F.2d at 835 n.6 (citing Forrester, 484 U.S. at 224).

7         Here, the pending motions to dismiss are vague about the nature of the functions

8    with which defendants have been entrusted under state law. Defendants assert that they "were

9    instrumental in the actions taken by the CSLB enforcing contractor's licenses," but they fail to

10   describe their functions and explain how the risk of liability would inhibit the exercise of their

11   functions. Defendants also fail to address the additional factors outlined in Fry and other

12   relevant cases.

13        In the absence of a direct precedent finding CSLB officials who are engaged in

14   licensing proceedings absolutely immune from liability under § 1983, the undersigned finds that

15   defendants have not met their burden of establishing entitlement to absolute immunity. See

16   Chalkboard, Inc. v. Brandt, 902 F.2d 1375, 1378-80 (9th Cir. 1989) (examining the nature of the

17   responsibilities of the individual officials under state law and holding that state agency officials

18   were not absolutely immune for their conduct in summarily suspending a day care center's

19   license). On the present record, defendants' motions to dismiss should not be granted on the

20   ground of absolute prosecutorial immunity.

21        C. Statute of Limitations

22        Defendants argue that most of the actions plaintiff complains of occurred more

23   than two years before plaintiff filed this case and that all causes of action that accrued more than

24   two years before the filing date of this case are barred by the statute of limitations.

25        Claims brought pursuant to 42 U.S.C. § 1983 are subject to the statute of

26   limitations governing personal injury actions in the state in which the case is brought. Wilson v.

1  Garcia, 471 U.S. 261, 266, 274-76 (1985); TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir.

2  1999).  California's statute of limitations for such actions is two years.  Cal. Code of Civil

3  Procedure § 335.1.  Plaintiff filed this case on October 3, 2006.  The court previously found, in

4  the context of defendant CSLB's motion to dismiss plaintiff's first amended complaint, that

5  claims against CSLB arising from acts that occurred more than two years prior to October 3,

6  2006, appeared to be barred by the statute of limitations.  (Findings & Recommendations filed

7  Feb. 21, 2007, at 5.)

8         In his second amended complaint, plaintiff alleges misconduct by defendants

9  with regard to the following:  CSLB's handling of a 1994 consumer complaint, CSLB's hearing

10  and adverse ruling against plaintiff in 1994, CSLB's suspension of plaintiff's builder's license in

11  1997 for failure to pay the citation issued concerning the 1994 complaint, CSLB's two-year

12  revocation of plaintiff's license arising from a new consumer complaint in 2001, defendant

13  Lawton's assertion in early 2004 that plaintiff had an outstanding enforcement issue regarding

14  the 2001 complaint, CSLB's refusal to renew plaintiff's home improvement sales license in mid-

15  2004 based on the outstanding enforcement issue, CSLB's failure to reinstate plaintiff's sales

16  license pursuant to an application submitted in November 2004, CSLB's failure to reinstate

17  plaintiff's sales license pursuant to an application submitted in June 2005, and CSLB's failure to

18  provide requested copies of documents in the fall of 2005.  (Second Am. Compl. at 7-17.)

19         Plaintiff did not pursue administrative remedies.  His habeas petition filed in the

20  state superior court on July 15, 2004, was denied on August 13, 2004.  Plaintiff did not pursue

21  further judicial relief until May 1, 2006, when he filed a habeas petition in the state court of

22  appeal.  The May 1, 2006 petition was denied on May 4, 2006, and plaintiff's final state habeas

23  petition, filed in the state's highest court on May 25, 2006, was denied on June 28, 2006.  (Id. at

24  10, 12-13 & 15.)  Plaintiff asserts that his allegations concerning events prior to October 3, 2004,

25  demonstrate that the events of the past two years reflect policy and custom.  (Id. at 17-18.)

26  /////

1    In light of plaintiff's pro se status, the undersigned has carefully considered

2  whether the allegations of the second amended complaint support any ground for tolling the

3  statute of limitations or any basis for finding that claims arising from conduct prior to October 3,

4  2004 did not accrue until a later time.  Plaintiff's allegations do not suggest a basis for tolling or

5  for delayed accrual of claims.  Defendants' motions to dismiss should therefore be granted as to

6  all claims that accrued prior to October 3, 2004.

7    D.  Stating a Claim Upon Which Relief May Be Granted

8    Defendants argue that (1) the second amended complaint is vague and conclusory

9  and contains no specific allegations stating a claim against each individual defendant; (2)

10  plaintiff has failed to allege deprivation of any right, privilege or immunity protected by federal

11  law; and (3) plaintiff has not stated civil rights claims against the defendants acting in their

12  individual capacities and in particular has not stated a claim for not being issued a home

13  improvement sales license.

14    The Civil Rights Act provides as follows:

15    Every person who, under color of [state law] . . . subjects, or causes
     to be subjected, any citizen of the United States . . . to the
16    deprivation of any rights, privileges, or immunities secured by the
     Constitution . . . shall be liable to the party injured in an action at
17    law, suit in equity, or other proper proceeding for redress.

18  42 U.S.C. § 1983.  The statute requires an actual connection or link between the actions of the

19  defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v.

20  Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).

21    "A person 'subjects' another to the deprivation of a constitutional right, within the

22  meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

23  omits to perform an act which he is legally required to do that causes the deprivation of which

24  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and

25  conclusory allegations concerning the involvement of official personnel in civil rights violations

26  are not sufficient.  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

1       As a general rule, supervisory personnel are not liable under § 1983 for the actions

2  of their employees under a theory of <u>respondeat superior</u> and, therefore, when a named defendant

3  holds a supervisorial position, the causal link between him and the claimed constitutional

4  violation must be specifically alleged.  <u>Fayle v. Stapley</u>, 607 F.2d 858, 862 (9th Cir. 1979);

5  <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978).  A supervisory official may be liable

6  under § 1983 if the official was personally involved in the plaintiff's constitutional deprivation or

7  if there is a sufficient causal connection between the supervisor's wrongful conduct and the

8  constitutional violation.  <u>Redman v. County of San Diego</u>, 942 F.2d 1435, 1446 (9th Cir. 1991);

9  <u>Hansen v. Black</u>, 885 F.2d 642, 645-46 (9th Cir. 1989).  A causal connection may be shown by

10  alleging and proving facts that show the supervisor set in motion a series of acts by others which

11  the supervisor knew, or reasonably should have known, would cause others to inflict the

12  constitutional violation.  <u>Ybarra v. Reno Thunderbird Mobile Home Village</u>, 723 F.2d 675, 680-

13  81 (9th Cir. 1984); <u>Johnson</u>, 588 F.2d at 743-44.

14       Here, the fifteen moving defendants are supervisory officials.  Plaintiff's second

15  amended complaint identifies defendant Sands as the CSLB's executive officer and "the head

16  individual for Creating Policy and Procedure for the day to day operation of the agency."

17  (Second Am. Compl. at 3.)  Defendants Kelly, Miller, Baldacci, Barnes, Booth, Brown,

18  Kirkbride, Lamb, Lang, Matich, Medrano, Mitchell, O'Rourke, and Zampa are similarly

19  identified as Board members who are delegated the authority and duty to create policy and

20  procedure for the day to day operation of the agency.  (<u>Id.</u> at 3-4.)  Plaintiff alleges that these

21  defendants have created policies and procedures that deprive individuals of their constitutional

22  rights and that the defendants have inspired their subordinates to deprive individuals of their

23  rights.  Plaintiff cites policies "where individual registrations fees are taken with no Registration

24  Occurring, not requiring adequate notice of hearings, accessing [sic] Criminal sanctions followed

25  by civil fines with criminal sanctions if not paid and has even implemented policy requiring

26  individual to submit to illegal searches in the form of fingerprinting for background searches and

1   has even inspired his subordinates to use a black mail approach to settling mediations between

2   consumers and builders." (Id. at 3-4.)

3                    Among the exhibits attached to the second amended complaint are various CSLB

4   forms, documents, and correspondence.  These exhibits indicate that the policies and procedures

5   complained of by plaintiff are governed by California statutes and regulations.  (See id., Apps. 3,

6   5, 7, 8, 10 & 15.)  Plaintiff has not alleged the existence of a specific policy or procedure created

7   and implemented by the fifteen supervisorial defendants by which plaintiff and others are

8   deprived of any right guaranteed by the United States Constitution.  The Constitution does not

9   preclude government agencies from collecting nonrefundable application fees and assessing civil

10  fines that may result in criminal sanctions if not paid.  Plaintiff's vague allegation of inadequate

11  notice of hearings is not supported by any allegation that the inadequacy is caused by a CSLB

12  policy or procedure rather than state statute or regulation.  Plaintiff's equally vague allegation

13  about illegal searches in the form of fingerprinting is not supported by an allegation that this a

14  CSLB requirement rather than state law.  Finally, plaintiff's assertion that the supervisorial

15  defendants inspired subordinate employees to use "a black mail approach to settling mediations

16  between consumers and builders" is speculative and falls far short of an allegation that the

17  defendants set in motion a series of acts by others which the defendants knew or should have

18  known would cause CSLB employees to violate plaintiff's civil rights.

19                   Plaintiff has alleged two equal protection claims.  First, he asserts that his

20  application for a home improvement sales license remained in limbo for over two years while a

21  co-worker's license was reinstated over the counter.  Second, he alleges that he was charged with

22  a felony when all of the other persons arrested on December 12, 2006 were charged with a

23  misdemeanor.  Where a plaintiff has not alleged discrimination based on his membership in a

24  protected class, the constitutional guarantee of equal protection of the laws "is essentially a

25  direction that all persons similarly situated should be treated alike."  City of Cleburne v.

26  Cleburne Living Center, 473 U.S. 432, 439 (1985).  See also McQueary v. Blodgett, 924 F.2d

1  829, 834-35 (9th Cir. 1991) (a plaintiff may state a discrimination claim under § 1983 by alleging

2  facts showing that a law or rule was not applied evenhandedly to him).  Here, plaintiff has not

3  alleged facts showing that he and his co-worker were similarly situated with regard to their

4  applications for a home improvement sales license, and one of plaintiff's exhibits demonstrates

5  that plaintiff and the other persons arrested on December 12, 2006, were not similarly situated.

6  According to CSLB's new release, plaintiff was the only person arrested on December 12, 2006,

7  who was using another contractor's license number, conduct which is a felony.  Another person

8  charged with illegal license use had been arrested on December 11, 2006, and was not one of the

9  eight arrested on December 12, 2006, and charged with a misdemeanor.  (See Second Am.

10  Compl., App. 13.)  Thus, plaintiff's allegations do not state an equal protection claim upon which

11  relief may be granted.

12          Plaintiff's allegations fail to establish that any of the fifteen supervisory officials

13  were personally involved in a deprivation of plaintiff's rights under the First, Fourth, Fifth, Sixth,

14  Eighth, Ninth, and Fourteenth Amendments.  His allegations do not demonstrate any wrongful

15  conduct by the fifteen officials or establish a sufficient causal connection between any wrongful

16  conduct and the claimed constitutional violations.  See Redman, 942 F.2d at 1446; Hansen, 885

17  F.2d at 645-46.  Nor has plaintiff alleged facts that show the defendants set in motion a series of

18  acts by others which the defendants knew, or reasonably should have known, would cause others

19  to inflict constitutional violations on plaintiff.  See Ybarra, 723 F.2d at 680-81; Johnson, 588

20  F.2d at 743-44.

21          In sum, as to all fifteen supervisory officials, plaintiff has not alleged facts that

22  state any claim to relief that is plausible on its face.  Plaintiff's claims against these fifteen

23  defendants should be dismissed for failure to state a claim on which relief can be granted.

24      E.  Qualified Immunity

25          Defendants next argue that they are entitled to qualified immunity.  "Government

26  officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly

1   established statutory or constitutional rights of which a reasonable person would have known.'"

2   Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (per curiam) (quoting Harlow v. Fitzgerald,

3   457 U.S. 800, 818 (1982)).

4           The threshold question for a court required to rule on a qualified immunity

5   defense is whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate

6   that the defendants' conduct violated a statutory or constitutional right.  Saucier v. Katz, 533 U.S.

7   194, 201 (2001).  If no such right would have been violated even if the plaintiff's allegations

8   were established, "there is no necessity for further inquiries concerning qualified immunity."  Id.

9           If a violation of a statutory or constitutional right is demonstrated by the plaintiff's

10  allegations, the court's next inquiry is "whether the right was clearly established."  Id.  This

11  inquiry must be undertaken in light of the specific context of the case.  Id.  In deciding whether

12  the plaintiff's rights were clearly established, "[t]he proper inquiry focuses on whether 'it would

13  be clear to a reasonable officer that his conduct was unlawful in the situation he confronted' . . .

14  or whether the state of the law in [the relevant year] gave 'fair warning' to the officials that their

15  conduct was unconstitutional."  Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (quoting

16  Saucier, 533 U.S. at 202, & citing Hope v. Pelzer, 536 U.S. 730 (2002)).  Dismissal based on

17  qualified immunity is appropriate if the law did not put the defendants on notice that their

18  conduct would be unlawful.  533 U.S. at 202.  Because qualified immunity is an affirmative

19  defense, the burden of proof initially lies with the official asserting the defense.  Harlow, 457

20  U.S. at 812; Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992); Benigni v. City of Hemet,

21  879 F.2d 473, 479 (9th Cir. 1989).

22          Although the plaintiff in this case has alleged violations of his constitutional

23  rights to due process, equal protection, double jeopardy, and the First Amendment, the facts

24  alleged by plaintiff concerning the supervisory defendants' actions do not demonstrate violations

25  of any of those rights, as set forth supra.  To the extent that plaintiff's allegations can be

26  construed as alleging a constitutional violation against any supervisory defendant, those

13

1  defendants have carried their burden of showing that they were carrying out state laws and did

2  not have fair notice that their conduct was unconstitutional.  Plaintiff has not shown that a

3  reasonable board executive officer or reasonable members of the board would have known that

4  any of their conduct was unconstitutional.

5          The court finds that plaintiff's claims for damages and declaratory relief against

6  the board members and the registrar should be dismissed on the ground that these defendants are

7  entitled to qualified immunity.

8          E.  Amendment

9          The court considers next whether plaintiff's complaint should be dismissed with

10  leave to amend.  "Valid reasons for denying leave to amend include undue delay, bad faith,

11  prejudice, and futility."  California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d

12  1466, 1472 (9th Cir. 1988).  Prejudice to the opposing party is often the most important factor.

13  See Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing Zenith Radio Corp.

14  v. Hazeltine Research, 401 U.S. 321, 330-31 (1971)).  See also Klamath-Lake Pharm. Ass'n v.

15  Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that, while leave to

16  amend shall be freely given, the court does not have to allow futile amendments).

17          In the instant case, it would be futile to grant plaintiff leave to amend.  Plaintiff

18  has already amended his pleading multiple times, and the defects of his current pleading do not

19  appear to be curable by amendment.  The undersigned will therefore recommend that defendants'

20  motions to dismiss be granted and that plaintiff's claims against the fifteen supervisory

21  defendants be dismissed without leave to amend.

22  II.  Defendants' Motion to Stay

23          At the commencement of this case, there were ongoing state judicial criminal

24  proceedings in which plaintiff was a party.  At the hearing of defendants' motions, plaintiff

25  informed the court and defendants' counsel that the state court proceedings have been completed.

26  The motion to stay is therefore moot and should be denied on that ground.

1          Accordingly, IT IS HEREBY RECOMMENDED that:

2          1.  Defendants' motions to dismiss filed on May 10, 2007, docketed as #32 and

3   #37, be granted;

4          2.  All claims against defendants in their official capacities be dismissed;

5          3.  All claims against defendants Baldacci, Barnes, Booth, Brown, Kelly,

6   Kirkbride, Lamb, Lang, Matich, Medrano, Miller, Mitchell, O'Rourke, Sands, and Zampa be

7   dismissed without leave to amend; and

8          4.  Defendants' motion to stay filed on May 10, 2007, and docketed as #33, be

9   denied as moot.

10          These findings and recommendations are submitted to the United States District

11   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **ten** (10)

12   days after being served with these findings and recommendations, any party may file written

13   objections with the court.  Such a document should be captioned "Objections to Magistrate

14   Judge's Findings and Recommendations."  Any reply to objections shall be served and filed

15   within **ten** (10) days after service of the objections.  The parties are advised that failure to file

16   objections within the specified time may waive the right to appeal the District Court's order.  See

17   Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18   DATED: July 6, 2007.

19

20                                 _____

21                           DALE A. DROZD

                             UNITED STATES MAGISTRATE JUDGE

22   DAD:kw

23   Ddad1\orders.prose\nab2191.mtd.mstay.f&r

24

25

26