IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RANDY D. NAB,

      Plaintiff,

v.

CONTRACTORS STATE LICENSE BOARD, et al.,

      Defendants.

                              No. CIV S-06-2191 GEB DAD PS

FINDINGS AND RECOMMENDATIONS

/

        This matter came before the court on August 29, 2008, for hearing of defendants' motion for summary judgment. Plaintiff, who is proceeding pro se, made no appearance at the hearing. John Padrick, Esq. appeared on behalf of defendants John Lawton and Rick Villucci. Counsel was granted leave to file a reply to the untimely opposition filed by plaintiff two days prior to the hearing. Defendants' reply was filed on September 5, 2008, whereupon the motion was submitted for decision. Plaintiff subsequently filed an unauthorized response to defendants' reply.

        Having considered the written materials submitted in connection with defendants' motion for summary judgment, the statements of defendants' counsel in open court, and the entire file, the undersigned recommends that defendants' motion be granted and that this case be closed.

BACKGROUND

Plaintiff commenced this action on October 3, 2006, by filing a habeas petition naming the Contractors State License Board (CSLB) as the respondent. The pro se pleading was liberally construed as a civil rights complaint seeking relief pursuant to 42 U.S.C. § 1983. After plaintiff paid the required filing fee, the Clerk of the Court issued a summons for defendant CSLB. Plaintiff subsequently filed a first amended complaint in which he named John Lawton as an additional defendant. Service of process was effected on both defendants.

Defendant CSLB moved for dismissal from the action, and defendant Lawton moved for a more definite statement. Plaintiff, in turn, moved for leave to filed a second amended complaint. The undersigned granted defendant Lawton's motion for more definite statement, granted plaintiff's motion for leave to amend, and recommended that defendant CSLB's motion be granted. On March 15, 2007, the recommendation was adopted by the assigned district judge, and all claims against defendant CSLB were dismissed with prejudice.

Plaintiff filed a second amended complaint naming seventeen defendants. Defendants John Lawton, the CSLB's legal action deputy, and Rick Villucci, the CSLB's chief investigative officer, filed answers to the second amended complaint. All other defendants, which included the chair and the vice chair of the CSLB, twelve members of the board, and the CSLB registrar, filed motions for dismissal. The undersigned recommended that those motions be granted. On August 30, 2007, the recommendation was adopted by the district judge, and the fifteen moving defendants were dismissed without leave to amend.

A scheduling order was issued on July 6, 2007. Pursuant to extensions of time granted by the district judge in June and July 2008, the two remaining defendants filed their motion for summary judgment and noticed it for hearing on August 29, 2008. The dates set for pretrial conference and jury trial were recently vacated pending a final ruling on defendants' motion for summary judgment.

/////

STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Owen v. Local No. 169, 971 F.2d 347, 355 (9th Cir. 1992).

> A party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Celotex Corp., 477 U.S. at 323. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979). The opposing party must demonstrate that a fact in contention

is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

ANALYSIS

I. Plaintiff's Claims Against Defendants Lawton and Villucci

By his second amended complaint, plaintiff seeks damages pursuant to 42 U.S.C. § 1983.

Plaintiff's allegations against defendant Lawton are as follows: as the legal action deputy of the CSLB, Lawton is aware of all legal actions filed against the CSLB; although Lawton was aware that plaintiff had twice paid the fee to be registered as a Home Improvement Salesman for Nick Construction, he displayed deliberate indifference and intentionally inflicted pain and suffering on plaintiff "by not requiring the Registration to take place"; by demanding that plaintiff's employer be threatened and that plaintiff be set up in a sting operation, Lawton was involved in the CSLB's deliberate retaliation for plaintiff's exercise of his First Amendment right to petition the court for redress of grievances; on January 22, 2004 Lawton sent plaintiff a letter about an outstanding enforcement issue and provided a contact number; after several phone calls, plaintiff was told to fax a letter to Lawton's attention because the office could not find any information about an outstanding enforcement issue; plaintiff sent a letter to Lawton; Lawton responded in a letter dated March 23, 2004, that plaintiff was required to pay another $1,553.38 to CSLB for investigation cost recovery because records of prior payment had been lost and to pay another $5,611.00 to Ann Theresa Oliver; plaintiff retained an attorney, who faxed a letter to Lawton; on June 28, 2004, plaintiff received a letter informing him that his Home Improvement

Sales License would not be renewed due to the enforcement issue; on July 12, 2008, plaintiff received a letter stating that the $1,553.38 for investigative fees had been paid on May 28, 2002, and that no restitution had been ordered.  (Second Am. Compl. at 4-5, 11-12 & App. 5-8.)

Plaintiff's allegations against defendant Villucci are as follows:  Villucci is the CSLB's chief investigative officer; posing as a homeowner, Villucci called plaintiff to request a bid on a new deck; Villucci was involved in an active conspiracy to have plaintiff arrested in retaliation for having exercised his First Amendment right to petition the court for redress of grievances; in an effort to punish plaintiff further, Villucci issued a press release to the media and on the internet naming plaintiff as a phony contractor; Villucci was also part of an operation to threaten plaintiff's employer if he admitted that plaintiff was working for him; Villucci filed false charges against plaintiff and defamed him; Villucci stole property from plaintiff under the guise of gathering evidence.  (Id. at 5-6.)

## II. Legal Standards for Section 1983 Claims

The Civil Rights Act provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires the plaintiff to allege and prove that he was deprived of rights secured by the Constitution or laws of the United States and that the deprivation was committed by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

The statute also requires an actual connection or link between the actions of the defendant and the deprivation alleged to have been suffered by the plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint

is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  In general, supervisory personnel are not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

III.  The Parties' Arguments and Evidence

Defendants seek summary judgment in their favor or, in the alternative, summary adjudication as to some of plaintiff's causes of action.  Defendants assert that plaintiff cannot establish essential elements of his claims because (1) it is not illegal to deny a person a license if the person does not comply with the law, (2) neither defendant was aware that plaintiff was engaged in the petitioning process when the defendant first encountered plaintiff, (3) there are no facts supporting plaintiff's conspiracy theory because there was no conspiracy, and (4) plaintiff's claim of character defamation arising from the broadcasting of facts about plaintiff's arrest does not rise to the level of a constitutional violation of privacy rights.

In compliance with Local Rule 56-260 and the standards applicable to motions for summary judgment, defendants have informed the court of the basis for their motion and have identified those portions of the pleadings, materials obtained through discovery, and affidavits which they believe demonstrate the absence of a genuine issue of material fact.  The evidence cited or provided by defendants establishes the following facts: the CSLB, which is part of the Department of Consumer Affairs, is the state agency responsible for licensing, regulating, and disciplining contractors; prior to March 2008, defendant Lawton had been the CSLB's Legal Action Deputy for approximately ten years; defendant Villucci has been the Chief Investigative Officer on the Statewide Investigative Fraud Team for the CSLB for approximately ten years; all aspects of these defendants' involvement with plaintiff arose out of the course and scope of their employment as legal action deputy and chief investigative officer, respectively.

Defendants' evidence establishes the following facts concerning plaintiff's licenses: plaintiff was issued a General Building Contractor (GBC) license on August 18, 1993; after a history of suspensions and two citations, plaintiff's GBC license was revoked on January 12, 2001; the revocation decision provided that plaintiff could not seek reinstatement of his license for two years, and state law required that reinstatement could not occur absent (a) payment of investigation and enforcement costs related to the revocation, (b) payment of any restitution that had been ordered, and (c) the posting of a disciplinary bond; on June 30, 2002, plaintiff applied for and was granted a Home Improvement Salesperson's (HIS) License as a salesperson for Pfister Construction.

Defendants' evidence establishes the following facts concerning plaintiff's interaction with the CSLB in 2004 and 2005: on January 22, 2004, the CSLB sent plaintiff a form letter advising him that his application for a contractor's license was unacceptable because CSLB records indicated there was an outstanding enforcement issue associated with that application and the application could not be processed until the issue was resolved; the form letter provided a contact address and telephone number; in a letter to John Lawton dated January 28, 2004, plaintiff asked for assistance in determining what he needed to do to get his contractor's license back, stated that he was ready to pay recovery costs, and requested information about the required disciplinary bond; in a letter dated March 23, 2004, defendant Lawton notified plaintiff that he must meet all of the normal requirements for licensure and additional requirements related to the disciplinary action that led to the revocation of his license in 2001; defendant Lawton advised plaintiff that the additional requirements included providing proof of making restitution to Ann Theresa Oliver in the amount of $5,611.00, payment to the CSLB in the amount of $1,553.38 for investigation cost recovery, and the posting of a disciplinary bond in the amount of $20,000.00; on May 18, 2004, plaintiff's attorney faxed a letter to defendant Lawton stating that Ann Theresa Oliver had been paid years ago and requesting that plaintiff's GBC license be reinstated immediately; on June 24, 2004, plaintiff's application for renewal of his HIS

license was returned to him because of the outstanding enforcement issue associated with his GBC license; plaintiff's HIS license expired on June 30, 2004; by letter dated July 12, 2004, the CSLB notified plaintiff that he had completed all conditions associated with the outstanding enforcement issue, as no restitution had been ordered, he had completed payment of the cost recovery in 2002, and the only other item to be provided for reinstatement of his GBC license was the disciplinary bond; the July 12, 2004 letter also indicated that plaintiff's HIS license application would be processed, and it was processed; however, plaintiff's HIS license was cancelled in October 2004 because the owner of the company for which plaintiff was a salesperson died in August 2004; on July 1, 2005, plaintiff applied for a new HIS license as a salesperson for Nick Construction, but the application did not include plaintiff's date of birth, social security number, or driver's license number; the CSLB sent plaintiff a form letter directing him to provide the missing information by October 5, 2005; the application was voided when plaintiff failed to provide the information required to complete this application.

  The evidence establishes the following facts concerning the sting operation in 2006 and subsequent events:  on December 12, 2006, defendant Villucci, posing as a homeowner, called plaintiff at the telephone number given to him by the CSLB's Statewide Investigative Fraud Team in connection with an undercover sting operation; plaintiff was one of at least two dozen people Villucci called for appointments; Villucci told plaintiff he would like to have a deck built on the back of his house; plaintiff agreed to come out and give an estimate; on December 13, 2006, plaintiff met with Villucci at the sting house; plaintiff gave Villucci a business card identifying himself as Randy D. Nab, manager of Nick Construction, license number 818792; plaintiff also gave Villucci a copy of Nick Construction's wall license and a printout from the CSLB web site indicating that Nick Construction was licensed; after discussing the proposed deck with Villucci, plaintiff viewed and measured the area where the deck was to be built and immediately thereafter presented Villucci with a written bid of $8,565.20; upon receipt of the bid, Villucci signaled the police officers who were concealed in the house, and the

1  officers arrested plaintiff; plaintiff was not authorized to use the license for Nick Construction to
2  bid the deck job, and he bid the job knowing he was not licensed; plaintiff was issued a citation
3  for violating California Business and Professions Code sections 7028.7 (contracting without a
4  license), 7027.3 (fraudulent use of another's contractor's license), and 7027.1 (advertising by an
5  unlicensed person); on June 29, 2007, plaintiff was convicted by nolo contendere plea of a
6  misdemeanor violation of section 7028.7; on March 5, 2008, the Registrar of Contractors adopted
7  the January 2, 2008 decision of the administrative law judge upholding the citations and civil
8  penalties and ordering plaintiff to cease all activities requiring a contractor's license; plaintiff has
9  never posted the disciplinary bond required for reinstatement of his GBC license.

10              In a declaration dated July 23, 2008, defendant Lawton explains that as legal
11 action deputy he did not direct the handling of a civil case brought against the CSLB but
12 coordinated the exchange of information between the CSLB and the deputy state attorney general
13 defending the case; he also reviewed proposed findings of fact issued by administrative law
14 judges after holding hearings and made recommendations to the CSLB registrar as to what course
15 of action to take; neither of these situations that would have required his involvement arose with
16 regard to plaintiff, and Lawton had no knowledge of any lawsuit filed by plaintiff until sometime
17 in July or August 2004; Lawton had no knowledge of any administrative proceeding involving
18 plaintiff prior to that date either, as none was pending; on March 23, 2004, when he responded to
19 plaintiff's letter about reinstatement, Lawton had no knowledge of any civil suit or administrative
20 proceeding involving plaintiff, did not ask anyone to investigate any licensing matter concerning
21 plaintiff, and did not direct anyone else to request an investigation; Lawton was rarely involved
22 in the licensing process for contractors and does not recall anyone asking him to look into any
23 licensing matter involving plaintiff; his letter to plaintiff was sent in response to plaintiff's letter
24 requesting information about reinstatement of his contractor's license; the letter he sent to
25 plaintiff did not impose any requirements other than those established by law, and he correctly
26 identified the statutory requirements; other than signing the March 23, 2004 letter to plaintiff, he

took no other action concerning plaintiff's applications for licensing or registration; he did not participate in the sting operations conducted by the enforcement division of the CSLB in December 2006, and he was not even aware of the sting operation; he treated plaintiff the same way he would treat any person he encountered in his position as legal action deputy for the CSLB under similar circumstances; he did not take any action because of a law suit filed by plaintiff or an administrative proceeding involving plaintiff; he had no knowledge of any conspiracy to deny plaintiff a license or target plaintiff in a sting.

In a declaration dated July 25, 2008, defendant Villucci explains that the CSLB's Statewide Investigative Fraud Team routinely uses sting operations to identify persons contracting or selling home improvements without a license; it is a normal and customary part of his job to participate in such operations; team members look for newspaper advertisements that solicit construction work but do not state a contractor's license number; many such advertisers are invited to come to a job site and make a presentation; when suspects violate the law by bidding to do the work, enforcement action is taken in order to discourage unlicensed contracting; Villucci had no involvement with plaintiff prior to December 12, 2006, when he received contact information for plaintiff from a CSLB analyst; it was his understanding that the analyst got the information from the Penny Saver publication; in connection with the December 2006 sting, Villucci called at least two dozen people to set up appointments; prior to the arrest of plaintiff, Villucci called the owner of Nick Construction and was told that plaintiff had been terminated the previous day and knew he was not authorized to use the Nick Construction license to bid on a deck job; prior to the sting, Villucci had no information from any source that plaintiff was engaged in a dispute over his contractor's license or his home improvement salesperson's license, or that plaintiff had a pending civil case or any pending administrative proceeding; Villucci treated plaintiff the same way he would treat any person he contacted in his position with CSLB under similar circumstances; no one ever suggested to him, and he never suggested to anyone, that plaintiff should be targeted as part of a sting operation for an unlawful reason; he

was not part of any conspiracy to deny plaintiff a license or target him in a sting.

Defendants do not dispute that they were acting under color of law, but they argue that their conduct was not a cause in fact of a deprivation of any of plaintiff's constitutional rights. Having considered defendants' evidence and their arguments, the undersigned finds that defendants have met their initial responsibility in moving for summary judgment in their favor, thereby shifting to plaintiff the burden of establishing that a genuine issue as to any material fact actually does exist.

Plaintiff's opposition to defendants' motion does not include an admission or denial of each fact presented in defendants' statement of undisputed facts, as required by Local Rule 56-260. Nor has plaintiff provided a separate statement of disputed facts. Plaintiff's opposition cites no documentary evidence or legal authorities. Attached to the opposition are two affidavits by plaintiff, both of which are dated May 27, 2008, and notarized on August 27, 2008.[1]

Plaintiff's first affidavit is filled with unsupported allegations, arguments, legal conclusions, and statements not made of personal knowledge. Plaintiff declares that defendant Villucci "specifically told me that the reason I was being arrested was for not putting up the $20,000 bond they wanted for my Home improvement Sales License." (Pl.'s Opp'n, First Aff. at 2) However, plaintiff does not state when defendant Villucci made this alleged statement, the context in which it was made, or, if the statement was made, its significance. Similarly, plaintiff asserts in a conclusory manner that there are "inaccuracies between the tape and Rick Villucci's written statements and the tape recording of the arrest" (id.), but plaintiff has not provided a transcript of the tape recording or copies of the written statements, and he has not explained how the unspecified inaccuracies are significant. Plaintiff's second affidavit concerns his personal

---

[1] Both statements commence with an awkwardly worded attempt to declare the contents to be true under penalty of perjury; neither document makes an unequivocal declaration under penalty of perjury that the statements made are true and correct. See 28 U.S.C. § 1746.

difficulties he has suffered but does not provide support for the claims alleged in this action.

Plaintiff's unauthorized response to defendant's reply merely presents duplicative arguments and exhibits, rhetorical questions, and assertions of "god given" rights.

IV. <u>Discussion</u>

Plaintiff claims that he has been deprived of his constitutional right to contractor's and salesman's licenses. Plaintiff has not cited any authority holding that there is a constitutional right to a license when the statutory requirements for the license have not been met, and the evidence shows that plaintiff has not met those requirements to date.

The evidence of defendant Lawton's involvement with plaintiff's licenses shows that plaintiff applied for reinstatement of his GBC license, was informed that the application could not be processed due to an outstanding enforcement issue, and sent a letter to defendant Lawton in which he inquired about the requirements for reinstating his GBC license and made specific reference to paying costs and posting a disciplinary bond. In response, defendant Lawton cited the statutory requirements, including the disciplinary bond required by California Business and Professions Code § 7071.8(b).[2] Plaintiff has offered no evidence that he ever posted the $20,000 bond. In the absence of such posting, plaintiff has not been entitled to

---

[2] In opposition to defendants' motion, plaintiff refers to "some made up bonding requirement" and finds it "pretty funny that both John Lawton and Rick Villucci both come [sic] up with a $20,000.00 bonding requirement for working for another Contractor where no such law exists on the books." (Pl.'s Opp'n at 1-2.) Plaintiff misstates defendants' assertions about the bonding requirement. The requirement pertains to reinstatement of plaintiff's GBC license, not his HIS license, and that requirement is not "made up." Section 7071.8(b) provides that "[t]he board shall require as a condition precedent to the issuance, reissuance, renewal, or restoration of a license . . . that the applicant or licensee file or have on file a contractor's bond in a sum to be fixed by the registrar based upon the seriousness of the violation, but which sum shall not be less than fifteen thousand dollars ($15,000) nor more than 10 times that amount required by Section 7071.6." Plaintiff has not challenged the registrar's decision to require a $20,000 bond for reinstatement of plaintiff's GBC license. At the conclusion of the recent administrative proceedings related to plaintiff's misdemeanor conviction of contracting without a license in 2007, plaintiff was ordered "to cease all activities for which a contractor's license is required until such time as he has obtained a valid license." (Decl. of John Padrick in Supp. of Mot. for Summ. J., Ex. S at 7.) In order to obtain a valid GBC license, plaintiff must have on file a contractor's bond in the sum of $20,000.00. Plaintiff's argument that defendants have "come up with a $20,000.00 bonding requirement for working for another Contractor" is misguided at best.

reinstatement of his GBC license at any time since he became eligible to seek reinstatement.

As a result of plaintiff's complete failure to meet one of the statutory requirements for reinstatement of his GBC license, the court is unable to find that the remaining defendants or any CSLB employee committed a constitutional violation by placing an erroneous enforcement flag on plaintiff's record. The confusion over whether plaintiff owed any money for restitution and recovery of investigative costs led to an initial rejection of his application for renewal of his HIS license in June 2004, but the error was corrected by July of 2004 and resulted in only a slight delay in the renewal of plaintiff's HIS license. There is no evidence of record that defendant Lawton caused the confusion, that defendant Villucci had any involvement with plaintiff's licenses, or that plaintiff's constitutional rights were implicated by a slight delay in renewal of a license that was cancelled a few months later due to the death of the contractor to whose license plaintiff's HIS license was linked.

With regard to plaintiff's application for a new HIS license in 2005, plaintiff has offered no evidence that he ever submitted a properly completed application after being informed that his application was incomplete. Plaintiff's argument that the missing information was trivial is unpersuasive, and it is clear that plaintiff's application was voided due to his own failure to provide the missing information, which included his date of birth, social security number and driver's license number. Plaintiff has not offered any explanation for his failure to provide the required information within the time provided or to file a new application after the time expired. Any harm suffered by plaintiff with regard to the 2005 application for a new HIS license cannot be ascribed to either of the defendants.

On this record, there is not a scintilla of evidence that defendant Lawton or defendant Villucci caused an unconstitutional deprivation of plaintiff's right to any kind of license. See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact" precluding summary judgment); see also Summers v. A. Teichert

& Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997). In the absence of any evidence of a disputed issue of material fact regarding defendants' conduct relative to plaintiff's licenses, the undersigned finds that defendants are entitled to summary judgment on plaintiff's claim that he was deprived of his constitutional right to a license.

Turning to plaintiff's claim that defendants Lawton and Villucci had a retaliatory motive for targeting him or conspiring to target him in a sting operation, the undersigned finds that the critical evidence with regard to defendant Lawton is the date on which plaintiff filed his state habeas petition, i.e., July 15, 2004. Defendant Lawton's involvement with plaintiff consisted of sending plaintiff a letter in March of 2004 in response to plaintiff's letter dated January 28, 2004. By July 12, 2004, prior to the filing of plaintiff's state habeas petition, CSLB staff had established that plaintiff did not owe any restitution and that he had paid the investigative costs related to the revocation of his GBC license in 2002. There is no evidence that defendant Lawton took any action, directly or indirectly, concerning plaintiff's licensing or registration after he signed the March 23, 2004 letter. Defendant Lawton declares that he was unaware of the sting operation that was conducted in December 2006, and plaintiff has presented no evidence to the contrary. Thus, no action taken by defendant Lawton could have been in retaliation for a state habeas action that was not filed by plaintiff until after defendant Lawton's involvement with plaintiff had ended.

Similarly, there is no evidence that defendant Villucci had any involvement with plaintiff or his licensing issues prior to December 12, 2006, when he was given plaintiff's name and about two dozen others to call in connection with a sting operation. There is no evidence that defendant Villucci was aware of any court cases or administrative proceedings involving plaintiff on December 12, 2006, when he telephoned plaintiff, or on December 13, 2006, prior to meeting with plaintiff. Thus, defendant Villucci's conduct relative to plaintiff could not have been for a retaliatory purpose and could not have resulted from a conspiracy to retaliate against

/////

plaintiff. Again, plaintiff has produced no evidence creating a disputed issue of material fact in this regard.

On this record, both defendants are entitled to summary judgment on plaintiff's claim that they acted in retaliation for plaintiff's exercise of his First Amendment right to seek redress of grievances by filing civil actions and pursuing administrative remedies.

Finally, the undersigned finds that defendants are entitled to summary judgment on plaintiff's claim of defamation, which is construed as a claim alleging deprivation of the federal constitutional right to privacy. The Supreme Court has recognized a constitutional "zone of privacy." Whalen v. Roe, 429 U.S. 589, 599-600 (1977); Griswold v. Connecticut, 381 U.S. 479, 483-84 (1965). However, the Court has also held that the "guarantee of personal privacy must be limited to those [personal rights] which are 'fundamental' or 'implicit in the concept of ordered liberty[.]'" Paul v. Davis, 424 U.S. 693, 712-13 (1976). In Paul, the plaintiff objected to a police practice of distributing flyers with the photographs of those arrested, but not convicted, of shoplifting under the caption "Active Shoplifters." Id. at 713. Plaintiff claimed constitutional protection against such disclosure and dissemination of the fact of his arrest on a shoplifting charge. Id. The Court declined to enlarge the concept of substantive privacy to encompass "a record of an official act such as an arrest" and found no violation of the right to privacy of the persons pictured in the flyers. Id. See also Russell v. Gregoire, 124 F.3d 1079, 1094 (9th Cir. 1997) (holding that right to privacy does not prevent disclosure of information about arrests because the information is "already fully available to the public"); Hammons v. Scott, 423 F. Supp. 625, 628 (N.D. Cal. 1976) (applying Paul to hold that the maintenance, use, and dissemination by state and federal officials of arrest records of individuals never convicted of a criminal charge based on the conduct for which they were arrested does not violate right to privacy). Here, defendants are entitled to summary judgment as a matter of law on plaintiff's claim that his constitutional right to privacy was violated by the dissemination of the fact of his arrest, along with others, for being "phony contractors."

Summary judgment should be entered in favor of both defendants because, after adequate time for discovery and upon motion, plaintiff has failed to make a showing sufficient to establish the existence of any disputed issue of fact regarding elements essential to his case and on which he would bear the burden of proof at trial.  Plaintiff's complete failure of proof concerning essential elements of his remaining claims necessarily renders all other facts immaterial.  Summary judgment should be granted because the standard for entry of summary judgment has been satisfied by the defendants.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' July 25, 2008 motion for summary judgment (Doc. No. 57), as amended on July 29, 2008 (Doc. No. 65), be granted; and

2. This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **twenty** (20) days after being served with these findings and recommendations, any party may file written objections with the court.  A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections shall be served and filed within **ten** (10) days after service of the objections.  The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 26, 2008.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1\orders.prose\nab2191.msj.f&r